DURIE TANGRI LLP
RYAN M. KENT (SBN 220441)
rkent@durietangri.com
VERA RANIERI (SBN 271594)
vranieri@durietangri.com
MATTHEW W. SAMUELS (SBN 294668)
msamuels@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
PINTEREST, INC.

Richard B. Vaught (SBN 112155)
RBV LAW FIRM
14440 Big Basin Way, Suite 15
Saratoga, California 95070
Telephone: (408) 275-8523
Facsimile: (408) 288-5191

Joseph J. Zito
Richard A. Castellano
Luiz Felipe Oliveira
DNL ZITO CASTELLANO
1250 Connecticut Ave, NW, Suite 700
Washington, DC 20036
202-466-3500
jzito@dnlzito.com

Attorneys for Plaintiff
DKR CONSULTING LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| DKR CONSULTING LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>PINTEREST, INC.,<br><br>　　　　　　　Defendant. | Case No. 4:18-cv-05383-JSW<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

Pursuant to Civil Local Rule 16-9 and this Court's July 10, 2019 Notice Scheduling Initial Case Management Conference (Dkt #45), Plaintiff DKR Consulting LLC ("DKR") and Defendant Pinterest, Inc. ("Pinterest") submit this revised Joint Case Management Report.

## I.   JURISDICTION & SERVICE

This Court has jurisdiction over patent claims under 35 U.S.C. §281 and 28 U.S.C. §§1331, 1338(a) providing for federal question jurisdiction of actions relating to patents and trademarks. No issues have been raised regarding this Court's jurisdiction and all parties have been served.

## II.   FACTS

Plaintiff's Statement

Plaintiff is a North Carolina corporation and is the owner by assignment of the entire interests in and to the `298 Patent, issued on June 13, 2017, naming Mr. David Robb, Mr. Grant Neerings, Mr. Cameron Patterson, Mr. Joseph Rodriguez, Mr. Quinton Richard Harris, and Mr. Benjamin Cook as the inventors. Defendant is a California corporation with its principal place of business in San Francisco.

Plaintiff's principal, Mr. David K. Robb ("Mr. Robb") was the CEO/Owner of DIY Media, Inc., which previously owned the `298 Patent.

DIY Media, Inc. had a business relationship with Defendant. DIY Media's business relationship with Defendant included having DIY Media's ShopPost platform integrated with Pinterest's platform for a period of time.

In or about April, 2017 DIY Media, Inc. assigned the `298 Patent to Mr. Robb and in or about August of 2017, Mr. Robb and Pinterest, represented by Mr. Henry Lien, entered into a Non-Disclosure Agreement ("NDA") to discuss the possibility of entering into a patent licensing agreement for the `298 Patent.

After the NDA was signed, Mr. Robb provided Defendant with DIY Media's documents, including the '298 Patent. Following the exchange of documents and of emails, DIY Media attempted for over 3 months to reach Defendant and its representative Mr. Henry Lien without success.

Defendant's exchange did not result in a licensing agreement for the `298 Patent. After the exchange between Mr. Robb and Defendant, the `298 Patent was assigned to Plaintiff. Plaintiff alleges that Defendant makes, uses, sells and offer for sale and distributes material components of accused systems

1    nationwide in the United States. Plaintiff alleges that the accused systems include systems for the

2    distribution of multimedia content and the consummation of transactions between content owners,

3    content distributors and consumers in a manner claimed in the `298 Patent.  Defendant's systems which

4    infringe include Pinterest's "Buyable Pin" system (the "Accused System")

5        After Plaintiff filed its complaint in this case, Defendant Pinterest removed the Buyable Pins from its

6    system and are now called Rich Pins and Product Pins.

7    Defendant's Statement

8        Pinterest does not infringe the '298 Patent.  As Pinterest explained in its motion to dismiss (Dkt

9    #26), each independent claim of the '298 Patent requires a processor configured for "displaying, in the

10   web browser, a portable web widget."  '298 patent at claim 1 and 24.  The patent defines this "portable

11   web widget" as "portable software that can be installed and executed within a hypertext-markup-

12   language web page by an end user that does not require additional compilation."  '298 patent, at col. 1, ll.

13   59–62.  Moreover, the claims all require the "portable web widget" to include additional components

14   such as a "transaction processing component" that "complete[s] a commercial transaction in the

15   embedded electronic commerce store."  '298 patent at claim 1 and 24.

16       DKR has no plausible theory as to why the software accused by DKR—namely, Pinterest's

17   mobile application—meets these (and other) limitations of the '298 patent.  By way of example,

18   Pinterest's mobile application is a native application and does not display the accused "Buyable Pins" in

19   a web browser.  As a result, when DKR points to the "Buyable Pins" displayed in Pinterest's native

20   mobile application, DKR has not identified a "portable web widget" displayed "in the web browser."[1]

21       Moreover, the "Buyable Pins" accused by DKR are not "portable web widgets" as defined by the

22   patent.  Buyable pins are not "portable software that can be installed and executed within a hypertext-

23   markup-language web page by an end user."  '298 patent, at col. 1, ll. 59–62.  These pins also lack other

24   elements of the claims including the "transaction processing component" because the commercial

25

26   _____

27   [1] In addition, earlier this year, Pinterest ended support for the accused "Buyable Pin" instrumentality for
     reasons unrelated to this litigation.  DKR now states that it may accuse "Product Pins" and "Shoppable
28   Pins," but neither such feature is identified in the Complaint, and DKR lacks a good faith basis to accuse
     either.  For example, in each instance, the user is directed to the retailer's website to make a purchase.

1   transaction is not completed within the buyable pin or even within the mobile application.

2        In addition, the '298 patent is invalid at least because the prior art anticipates what DKR claims as

3   its invention.  By way of example, an e-commerce solution by Amazon called aStore would invalidate

4   the '298 patent under the patent scope alleged by DKR in Complaint.

5        Finally, DKR tries to obscure the lack of any infringement claim by reference to an alleged

6   business relationship with Pinterest and by reference to an NDA.  While it is unclear what DKR means

7   by "having DIY Media's ShopPost platform integrated with Pinterest's platform" (other than the fact that

8   DIY Media used Pinterest's services), there is no allegation that Pinterest copied "Buyable Pins" from

9   information learned from DIY Media.  And DKR's NDA reference misstates the purpose of the NDA at

10  least as understood by Pinterest.  In particular, on August 14, 2017, a patent broker reached out to in-

11  house counsel for what Pinterest understood as a discussion to purchase a patent portfolio.  Pinterest

12  requested the broker sign its standard NDA to enable discussions surrounding those patents.  Pinterest

13  did not conclude that the portfolio was worth buying, and at no point did Pinterest conclude that it

14  infringes the claims of the '298 patent.

15  Plaintiff's Response To Defendant's Statement

16        Plaintiff's statement is argumentative, not factual and thus, in view of the argumentative nature of

17  Defendant's Statement, Plaintiff feels compelled to respond.

18        Defendant Pinterest's motion to dismiss (Dkt#26) was denied by the Court on its order from June

19  5, 2019 (Dkt #41). The Court explained "The Court finds that the arguments from both parties are

20  premised upon their respective factual positions on the meaning and breadth of the patent claim terms.

21  The definition and understanding of the key claim term "portable web widget" is essential to the

22  resolution of the dispute. Defendant sets out its understanding of the terms, and argues that the meaning

23  is well known and common. (Dkt. No. 31, Opp. Br. at 6.) Plaintiff disagrees. Because this factual dispute

24  is more appropriate for resolution in the context of a claim construction, the Court finds the motion to

25  dismiss for failure to state a claim is improper at this procedural posture and DENIES the motion. (See p.

26  4, Dkt #41)"

27        Defendant's assertions are based on an inaccurate assessment of the infringement assertion as

28  clearly set forth in the charts. Defendant asserts that "Pinterest's mobile application is a native

application" … "and is not a web browser".  This assertion is incorrect because Pinterest mobile application has a built-in "web browser" functionalities and allows for access to the web and performs product based searches and accesses third party web sites. Accordingly, the Defendant's argument that the functionality of a "web browser" in the Pinterest application does not make Pinterest application a "web browser" is disingenuous.

Pinterest also incorrectly asserts that ""Buyable Pins" accused by DKR are not "portable web widgets" as defined by the patent" because "Buyable pins are not "portable software that can be installed and executed" … "by an end user". Defendant is disingenuous when it improperly attempts to import portions of the "BACKGROUND" section of the specification of the `298 patent into the claims. Furthermore, Pins are set up or associated by a seller (i.e. content owner) with specific purchasable products in a manner recited in the patent and a purchaser can execute those pins to purchase the purchasable products.

Pinterest also asserts that "pins also lack other elements of the claims including the "transaction processing component" because the commercial transaction is not completed within the buyable pin or even within the mobile application". This is also incorrect as the purchase as indicated above, can be completed without leaving Pinterst application.

As to the remaining argument, without an identification and explanation as to which specific feature of the Amazon's aStore relate to the elements of the claim, it is not possible to address this general assertion of invalidity, which was- raised for the first time on December 13, 2018.- Plaintiff will respond to- this assertion once provided with more specific information

## III.   LEGAL ISSUES

The parties dispute whether the '298 patent is infringed. Defendant disputes the validity of the `298 patent.  In particular, Pinterest contends that the asserted claims are not infringed as a matter of law, and that at least under the scope of the claims asserted by DKR, those claims are anticipated as a matter of law by the prior art.

## IV.   MOTIONS

Pinterest moved the Court to dismiss the Complaint on December 13, 2018. The motion was denied by the Court on June 5, 2019 (Dkt #41).

In addition, after receiving DKR's July 24, 2019 infringement contentions, Pinterest sent a letter to DKR identifying deficiencies with the contentions and requesting that DKR confirm by August 5, 2019 that it would supplement its contentions on or before August 9, 2019.  Pinterest explained that it needed Patent Local Rule 3-1-compliant contentions to formulate its defense, including the identification of prior art and the preparation of invalidity contentions.  Pinterest also informed DKR that should DKR refuse to provide infringement contentions that comply with the Local Rules, Pinterest would raise these issues at the upcoming CMC and, if necessary, would move the Court to strike DKR's infringement contentions.

On August 4, 2019, counsel for DKR stated they had drafted a response, that their client was reviewing the response, and that they would forward their response prior to August 9, 2019.  On August 8, 2019, counsel for DKR stated they would not be able to send a response by August 9, 2019, and that they would forward their response over the weekend.  On August 12, 2019, counsel for Pinterest emailed counsel for DKR, stating they had not received any response and requesting DKR's response.  After further correspondence, on August 15, 2019, counsel for DKR suggested that the parties move all the dates in the CMC Statement filed July 10, 2019 by one month and that DKR provide a new set of infringement contentions.  As a result, the parties have agreed to a schedule that includes an additional month for each deadline, and Pinterest will review the amended infringement contentions to be served by DKR.

It is Plaintiff's position that the infringement contentions and its accompanying chart are sufficient and fully complies with the local rules.

The parties agreed to move the due date for Infringement Contentions to August 26, 2019 and Plaintiff agreed to provide Defendant with more details.

## V.    AMENDMENT OF PLEADINGS

The parties agree that the deadline to amend pleadings has passed, and that any further amendments must be supported by a showing of good cause.

## VI.    EVIDENCE PRESERVATION

The parties reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken steps to preserve evidence relevant to the issues

1    reasonably evident in this action.

2           The parties met and conferred pursuant to Fed. R. Civ. P. 26(f) and propose the discovery

3    plan set forth below.

4    **VII.    DISCLOSURES**

5           The parties have served their initial disclosures.

6    **VIII.   DISCOVERY**

7           Pinterest served DKR with a first set of interrogatories and a first set of requests for

8    production on July 30, 2019.  No other discovery has been taken to date. The parties anticipate

9    the scope of discovery will be tailored to the following subjects:

10          (i) the technical details of the Accused System;

11          (ii) the corresponding revenue generated therefrom;

12          (iii) '298 patent and its prosecution;

13          (iv) prior art to the '298 patent;

14          (v) ownership and assignments of the '298 patent; and

15          (vi) license(s) related to the inventions claimed in the '298 patent.

16          **A.      Form of Production**

17   Plaintiff's Position

18          Plaintiff requests that both parties follow the following format of production:

19          The parties will produce all documents in PDF format. The parties will produce all files

20   that can easily be converted into PDF in PDF format with Bates Labels for each produced

21   document and that includes a separate PDF for each document produced.  The parties may

22   request production in native format, and the producing party shall make such files available.

23   Physical files will be scanned and produced as PDF and the originals will be maintained should

24   the requesting party wish to see them.

25   Defendant's Position

26          Pinterest does not agree that it must produce documents in PDF format.  Pinterest

27   proposes the following based upon Plaintiff's interest in producing documents in PDF format:

28          Pinterest will produce all documents and electronically stored information ("ESI") either

in single-page Tagged Image File Format ("tiff") with a corresponding load file that includes Bates Labels for each produced document or in the document's native format, at its election. If any TIFF image cannot be viewed, however, DKR may request the native files that were associated with the unviewable TIFF images, and Pinterest shall provide such files or search PDF files associated with the unviewable TIFF images.

DKR will produce all documents and ESI in searchable PDF format with a corresponding load file that includes Bates Labels for each produced documents and that includes a separate PDF for each document produced. If DKR's production format proves unmanageable or insufficient (including, for example, if DKR produces multiple documents in a single PDF file, if DKR's production fails to maintain familial relationship between documents or if DKR's production obscures important metadata), Pinterest may request production in native format, and DKR shall provide such files. The parties would negotiate what metadata will be provided as part of load files but agree that neither party shall be required to provide more metadata than the other.

### B.   Privileged Materials

The parties agree to adhere to Federal Rule of Civil Procedure 26(b)(5) in their assertion of a privilege or the work product, common interest or joint defense doctrines to withhold otherwise relevant documents. Moreover, the parties agree that each party asserting such a privilege or doctrine shall log the withheld document in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. Neither party, however, shall be required to log withheld documents that were created on or after August 31, 2018, where those document were created by or sent to or from outside or in-house counsel for a party. The withheld document log for a given production must be provided within thirty (30) days of request by another party.

In addition, the parties agree that production of privileged materials or attorney work product without an express written notice of intent to waive the attorney-client privilege or work product protection shall not be deemed a waiver of the attorney-client privilege or work product protection so long as the producing party informs the requesting party of the identity of the

7

materials mistakenly produced.  Such materials should not be used and should be returned to the producing party under those circumstances.

**C.      Discovery Plan**

The parties propose that the discovery rules found in the Federal Rules of Civil Procedure should not be modified except to clarify that expert depositions shall not count towards the limits set forth by the Federal Rules of Civil Procedure.  The parties have the following dispute regarding the production of ESI.

Plaintiff's Position on ESI Production

Plaintiff proposes that no party shall have to search for or produce information that is not reasonably related to the issues in this case.  Moreover, for other email information, Plaintiff proposes that:

- Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

- Emails will not be within the scope of the first request for production.

- Email production shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

- The parties agree to limit the number of custodians and search term per custodian in their request for production of email to a reasonable one.

Defendant's Position on ESI Production

Pinterest proposes that no party shall have to search for or produce information unrelated to patent ownership, patent assertion against Pinterest, or monetary damages in email or other forms of electronic correspondence (collectively "email"), which are the categories of email information that the parties could identify as being potentially relevant.

Moreover, for other email information, Defendants propose that the Court adopt the Northern District of California's model stipulation and order on ESI discovery including that:

- General ESI production requests under Federal Rules of Civil Procedure 34 and

8

45 shall not include email or other forms of electronic correspondence.  To obtain email parties must propound specific email production requests.

- Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

- Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

- Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

- Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

- Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered

when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

**D.    Protective Order**

Pinterest has provided DKR with a draft of a protective order on July 19, 2019, that is based on a model protective order provided by the Northern District of California.  Pinterest is awaiting comments from DKR on the proposed protective order.

**IX.    CLASS ACTIONS**

This matter is not a class action.

**X.    RELATED CASES**

None.

**XI.    RELIEF**

Plaintiff's Statement

That Defendant be held to have infringed the `298 Patent under 35 U.S.C. § 271(a)(b) and (c).  That Defendant has acted with knowledge of the '298 Patent. That judgment be entered for Plaintiff against Defendant, for Plaintiff's damages according to proof, and for any additional damages attributable to infringements of Plaintiff's patent rights and for enhanced damages under 35 U.S.C. § 284 and § 285. That judgment be entered for Plaintiff against Defendant, adequate to compensate Plaintiff, for reasonable royalties and/or other statutory damages based upon Defendant's acts of patent infringement and for its other violations of law under 35 U.S.C. § 271, § 284 and § 285. That Defendant be required to account for all gains, profits, and advantages derived from its acts of infringement and for its other violations of law and that Plaintiff be awarded damages in the amount of such profits under 35 U.S.C. § 284 and § 285. That the actions of Defendant be found willful. That judgment be entered for Plaintiff and against Defendant, for enhancement of the damages awarded for patent infringement under 35 U.S.C. § 284 and § 285. That the actions of Defendant be found exceptional under 35 U.S.C. § 285. That Plaintiff be granted judgment against the Defendant for Plaintiff's costs and attorney's

1   fees under 35 U.S.C. § 285 and/or the inherent powers of the Court. That the Court grant such

2   other, further, and different relief as the Court deems proper under the circumstances.

3   Defendant's Statement

4          Pinterest contends that because it does not infringe the asserted claims of the '298 patent,

5   and because the asserted claims of '298 patent are invalid, DKR should take nothing by way of

6   its Complaint.  Moreover, because DKR has no plausible basis to claim infringement by Pinterest

7   and because Pinterest has informed DKR of this fact but DKR has nonetheless persisted with this

8   action without a reasonable basis to do so, Pinterest will ask the Court to hold the actions of

9   DKR to be exceptional under 35 U.S.C. § 285 and to award judgment against DKR for

10  Pinterest's costs and attorney's fees under 35 U.S.C. § 285 and/or the inherent powers of the

11  Court.

12  **XII.    SETTLEMENT AND ADR**

13         A Settlement Conference was held before Magistrate Judge Hixson on July 31, 2019.

14  The case did not settle.  Magistrate Judge Hixson ordered the parties to notify his Courtroom

15  Deputy once this Court enters a claim construction order to schedule a further telephone call.

16  **XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

17         The parties declined to proceed before a Magistrate Judge for all purposes.

18  **XIV.   OTHER REFERENCES**

19         The parties agree that this case is not is suitable for reference to binding arbitration, a

20  special master, or the Judicial Panel on Multidistrict Litigation.

21  **XV.    NARROWING OF ISSUES**

22         The parties are not aware of any issues that can be narrowed by agreement at this time.

23  **XVI.   EXPEDITED TRIAL PROCEDURE**

24         This case is not the type of case that can be handled under the Expedited Trial Procedure

25  of General Order 64.

26  **XVII.  SCHEDULING**

27         The parties propose the schedule set forth below:

28

| Deadline Item | Deadline Date |
|---|---|
| Deadline to serve amended disclosure of asserted claims and infringement contentions that comply with Local Patent Rule 3-1) | August 26, 2018 |
| Deadline to serve invalidity contentions: (Local Patent Rule 3-3) | October 9, 2019[2] |
| Deadline to exchange proposed terms for construction: (Local Patent Rule 4-1) | October 30, 2019 |
| Deadline to serve damages contentions: (Local Patent Rule 3-8) | November 30, 2019 |
| Deadline to exchange preliminary claim constructions and extrinsic evidence: (Local Patent Rule 4-2) | December 22, 2019 |
| Deadline to serve responsive damages contentions: (Local Patent Rule 3-9) | January 13 2019 |
| Deadline to complete and file joint claim construction and prehearing statements: (Local Patent Rule 4-2) | January 16, 2019 |
| Deadline for completion of claim construction discovery: (Local Patent Rule 4-4) | January 23, 2019 |
| Deadline to serve opening brief on claim construction: (Local Patent Rule 4-5) | January 30, 2019 |
| Deadline to serve responsive brief on claim construction: (Local Patent Rule 4-5) | February 20, 2020 |
| Deadline to serve reply brief on claim construction: (Local Patent Rule 4-5) | February 27, 2020 |
| Claim Construction Hearing | Subject to Court's Calendar |
| Further Joint Case Management Report and Conference | Within 30 days of claim construction ruling |

---

[2] Should DKR's amended infringement contentions fail to meet the requirements of Patent Local Rule 3-1, Pinterest reserves the right to move to strike those contentions and request that deadlines that follow from DKR's compliance with this local rule be extended.

The parties do not propose a schedule beyond the further joint case management report and conference.  By that conference, the parties will have received the Court's order on claim construction and will be better positioned to provide suggestions on what the remainder of the schedule should be, including specifically expert and fact discovery deadlines.

## XVIII. TRIAL

DKR anticipates that this will be a five-day trial.

Pinterest believes that this case will be resolved in its favor pursuant to motion. However, any remaining issues would be tried to a jury with such a trial lasting approximately 7 days, depending on the remaining issues to be tried.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Pinterest has filed its "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-16.

## XX.   PROFESSIONAL CONDUCT

The parties' counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER

None.

Dated:  August 16, 2019                                    DURIE TANGRI LLP

By:

*/s/ Matthew W. Samuels*
MATTHEW W. SAMUELS

Attorney for Defendant
PINTEREST, INC.

Dated:  August 16, 2019                    DNL ZITO

                                           By:  _____/s/ Luiz Felipe Oliveira_____
                                                            LUIZ FELIPE OLIVEIRA

                                           Attorney for Plaintiff
                                           DKR CONSULTING LLC

## **FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Matthew W. Samuels, attest that concurrence in the filing of this document has been obtained.

Dated:  August 16, 2019                    _____/s/ Matthew W. Samuels_____
                                                            MATTHEW W. SAMUELS

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2019 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Matthew W. Samuels*
Matthew W. Samuels

JOINT CASE MANAGEMENT STATEMENT / CASE NO. 4:18-CV-05383- JSW